The issues presented by this appeal are whether the notice sent by AmSouth Bank to William Lavender complies with the requirements of § 7-9-504(3), Code of Alabama (1975); and, if it does not, whether AmSouth was barred from recovering a judgment for the deficiency on a promissory note secured by a security agreement on certain logging equipment after the sale of that equipment by AmSouth. AmSouth lent Mr. Lavender $20,513.18 to refinance certain equipment[1] he used in his logging business. Mr. Lavender signed a promissory note and a security agreement, using the logging equipment as collateral to secure the loan. Thereafter, Mr. Lavender did not make the payments due on the note and voluntarily allowed AmSouth to repossess the collateral.
Following the repossession, AmSouth sent Mr. Lavender letters dated April 13 and May 14, 1984, informing him that the described collateral would be sold at either a public auction or a private sale unless redeemed within 10 days. The April 13 letter referred to the skidder, while the May 14 letter referred to the 1976 Chevrolet pick-up truck, the White 9000 truck, and the Johnson pole trailer. The pertinent part of each of the letters is as follows:
 "You are hereby notified that ten (10) days or more from the date of this letter the above described collateral repossessed from you by AmSouth Bank, N.A. will be sold at public auction or private sale unless redeemed in full by you within this time period."
From June 12 through June 20, 1984, AmSouth ran the following advertisement in the Mobile Press Register:
 "74 White 9000 76 Ford Pickup Johnson Pole [Trailer] John Deere Skidder 540B
 "AmSouth Bank is now accepting bids on the above repossessed equipment. The bank reserves the right to reject or withdraw its offer to sell at any time. The equipment is to be sold as is, where is, with no warranties written or implied. Call 653-7700."
After this, the skidder, the White 9000 truck, and the Johnson pole trailer were sold to the highest bidder, for $5,000, and the 1976 Chevrolet pick-up truck was sold for its $100 scrap value. Following the sale, AmSouth initiated the instant action in the Mobile County Circuit Court for the *Page 195 
balance due on the note. Mr. Lavender counterclaimed, seeking damages for AmSouth's alleged failure to comply with Alabama's enactment of the Uniform Commercial Code in the sale of the collateral. The jury returned a verdict in favor of AmSouth for the full amount sued for, $22,970.79,[2] and in favor of Mr. Lavender for $8,000 on his counterclaim. Mr. Lavender appeals. We affirm.
Section 7-9-504(3) prescribes the manner in which a secured party may dispose of collateral following repossession. The secured creditor must reasonably notify the debtor prior to the resale of any repossessed collateral. "Reasonable notification" is not defined by the Code; however, the official comments to § 7-9-504 indicate that the notice must be sent in time to enable persons to protect their interests by taking part in the sale or disposition. In Wells v. CentralBank, 347 So.2d 114, 120 (Ala.Civ.App. 1977), the court wrote:
 "The purpose of the notice is to enable the debtor to protect his interest in the property by paying the debt, finding a buyer, being present at the sale to bid on the property or have others do so, in order to keep from sacrificing the collateral at a secret sale at less than its true value."
Section 7-9-504(3) requires that the secured party give the debtor reasonable notification of the time and place of any public sale, while it requires only reasonable notification of the time after which any private sale is to be made. The notice must identify whether the sale is to be public or private. Davis v. Huntsville Prod. Credit Ass'n, 481 So.2d 1103
(Ala. 1985), Simmons Machinery Co. v. M M Brokerage, Inc.,409 So.2d 743 (Ala. 1981).
In the present case, AmSouth's notice to the Lavenders regarding the sale of the repossessed collateral was deficient in that it failed to satisfy the requirements of § 7-9-504(3). "Public sale" or "private sale" is not defined in the Code; however, in analyzing whether a sale is public or private, courts have focused on whether there is a "public invitation" to purchase the property, Benton v. General Mobile Homes, Inc.,13 Ark. App. 8, 678 S.W.2d 774 (1984); whether the invitation places restrictions on those wishing to participate, MorrellEmployee Credit Union v. Uselton, 28 U.C.C. Rep.Serv. 269 (Tenn.Ct.App. 1979); and whether the sale was conducted in a place where the public has access, Bolen v. Mid-ContinentRefrigerator Co., 411 N.E.2d 1255 (Ind.App. 1980). In the case at bar, there was a public invitation to bid on the repossessed collateral, as evidenced by the advertisement that ran in the Mobile Press Register. Furthermore, the newspaper advertisement placed no restrictions on the bidding, and anyone could view the collateral, if they so desired, as it was located on a lot to which the public had easy access. The method of disposition of the collateral in the instant case was by public sale. AmSouth failed to notify Mr. Lavender that the collateral would be sold publicly, at a particular time and at a particular place.
Does this insufficient notice bar AmSouth from recovering a deficiency judgment?
This Court addressed this issue in Valley Mining Corp. v.Metro Bank, 383 So.2d 158 (Ala. 1980), and held that insufficient notice does not bar a secured party from recovering a deficiency judgment. In Valley Mining, the Court also held that damages resulting from the creditor's failure to comply with the notice requirements may be set off against the total deficiency. See § 7-9-507(1), Code 1975. This was followed in Abston v. Central Bank of the South, 492 So.2d 1298
(Ala. 1986); First Alabama Bank of Montgomery, N.A. v. Parsons,390 So.2d 640 (Ala.Civ.App. 1980); Henderson v. Hanson,414 So.2d 971 (Ala. 1982).
Mr. Lavender has directed our attention to Low Cost Cars,Inc. v. Munn, 399 So.2d 277 (Ala. 1981), and he argues that that case supports his position that insufficient notice should be an absolute bar to AmSouth's recovering a deficiency. In LowCost Cars, Inc., the debtor sued the *Page 196 
secured creditor, inter alia, for conversion in connection with the repossession and sale of his automobile. The secured creditor counterclaimed for a deficiency. The jury returned a verdict in favor of the debtor on his conversion claim and also returned a verdict in favor of the secured party on its claim for the deficiency. The Court held that the trial court erroneously instructed the jury on the law as it related to the debtor's conversion claim and, thereafter, failed to afford the secured creditor the opportunity to object to that instruction before the jury retired to deliberate, and outside its hearing. Consequently, the judgments entered on the two verdicts were reversed and the case was remanded for a new trial. That portion of the opinion relied upon by Mr. Lavender appears at 281:
 "The genesis of this rationale in general is found in the common law because deficiency judgments are in derogation of the common law; any right to a deficiency accrues only after strict compliance with relevant statutes. See Leasco Data Processing Equipment Corporation v. Atlas Shirt Co., Inc., 66 Misc.2d 1089, 323 N.Y.S.2d 13 (N.Y.Civ. 1971)."
This commentary by the Court is dictum. Pretermitting an indepth discussion of it, suffice it to say that to the extent it is inconsistent with the holdings in Valley Mining, supra, and Abston, supra, it is expressly overruled. For the above stated reasons, the judgment in favor of AmSouth is affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
[1] A John Deere skidder 540 B, a White 9000 truck, a Johnson pole trailer, and a 1976 Chevrolet pick-up truck.
[2] This figure includes post-default interest, collection costs, and attorney fees.